## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALANNA WATKINS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case Nos. 13-cv-0963; 19-cv-3478 (TSC) |
| | ) |
| **WASHINGTON METROPOLITAN** | ) |
| **AREA TRANSIT AUTHORITY,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **MEMORANDUM OPINION**

Plaintiff Alanna Watkins brings these two cases against her former employer, Defendant Washington Metropolitan Area Transit Authority ("WMATA"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42.U.S.C. § 2000e, *et seq*., and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  Watkins alleges discrimination on the basis of gender (female), retaliation for prior protected Equal Employment Opportunity (EEO) activity, hostile work environment (based on gender and retaliation), and constructive discharge.  WMATA has moved to dismiss both complaints for failure to comply with this court's orders, inexcusable delay, bad faith, and failure to state a claim.  19-cv-3478, Def.'s Mot., ECF No. 28-1.

For the reasons that follow, the court will GRANT in part and DENY in part WMATA's motion to dismiss.

## I.    BACKGROUND

### A.  Factual Background[1]

Watkins was employed by WMATA as a Police Detective beginning in July 1999.  13-cv-0963 ("*Watkins 1*"), Compl. ¶ 12, ECF No.1.  She alleges that at some unspecified time during her employment, her then-supervisor, Sergeant Matt Muller, regularly referred to her and other female detectives as "bitches."  *Id.* at ¶ 13; 19-cv-3478 ("*Watkins 2*"), Amended Compl. ¶ 12, ECF No. 23.  Watkins also claims that on one occasion Mueller asked her if "she was leaving early for 'shopping or sexy time.'"  *Watkins 1*, Compl., ¶ 16.  She further alleges that Muller refused to speak with her about work-related matters because of her gender, communicated to her through her male partner, ignored her or spoke to her with his back turned, refused to assist her, told her to speak to Sergeant Paige regarding work issues and then yelled at her to get out of Sergeant Paige's office, and spoke to her and other female detectives in a short, curt, demeaning and condescending manner.  *Id.* at ¶¶ 17-20.  Watkins claims that Muller did not communicate with Watkins's male coworkers in the same manner.  *Id. at* ¶ 21.

Watkins also alleges that Muller would deny her requests for leave or to leave early, while regularly granting leave requests from male detectives; that he questioned and sometimes denied her request for overtime while granting similar requests made by her male detective partner; and that he denied her the opportunity for career-enhancing training courses while approving such courses for male detectives.  *Id.* at ¶¶ 22-24, 27.

Watkins states that in early 2012 she began complaining about Muller's conduct toward her through her chain of command, including speaking to Muller's immediate supervisor,

---

[1] For purposes of a motion to dismiss under Rules 12(b)(6) and 12(c), the court treats Watkins' factual allegations as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Tapp v. Washington Metro. Area Transit Auth.*, 306 F. Supp.3d 383, 392 (D.D.C. 2016).

Lieutenant Gregory Hanna, but that Hanna took no action to address these issues.  *Id.* at ¶¶ 30-35; *Watkins 2*, Amended Compl. ¶ 12.  Instead, he told Watkins to "'just learn to deal with [Muller.]'"  *Watkins 1,* Compl., ¶ 33.

Watkins claims that on December 2, 2012, despite her acceptable performance, she was demoted, even though a male detective with a similar performance, who had no prior EEO activity, was not.  *Watkins 2*, Amended Compl. ¶¶ 15-16.  On December 13, 2012, Watkins was charged with dereliction of duty and placed on a corrective action plan ("CAP") by Lieutenant Boehm, when another male employee who had committed the same acts, but who had no prior EEO activity, was not placed on such a plan.  *Id.* at ¶¶ 17-20.  While she was on the CAP—which appears to have been related to a financial crime investigation Watkins was working on—Watkins went on a two-month medical leave and claims that Sergeant Clayton admitted that no one worked on her cases while she was gone.  *Id.* at ¶ 22.  She also alleges that the CAP acknowledges that she was not provided the investigative tools she needed to work on the cases when she was not on leave.  *Id.* at ¶¶ 21-22.  She also claims that she and a male detective each closed a case within a week, but she was placed on a CAP while the male detective was not.  *Id.* at ¶ 23.

On or around May 28, 2013, Watkins again was charged twice with dereliction of duty for failure to respond to a crime scene.  *Id.* at ¶¶ 24-25.  She claims that other detectives, who were either male and/or had no prior EEO activity, committed the same act but were not similarly disciplined.  *Id.* at ¶ 25.  Watkins was also suspended for one day at some point in May 2013 and claims that other similarly situated male employees with no prior EEO activity did not receive similar discipline.  *Id.* at ¶¶ 26-27.

In June 2013, Sergeant Clayton reassigned one of Watkins's cases to a male co-worker in the Criminal Investigations Division; other allegedly similarly situated male coworkers did not have their cases reassigned.  *Id.* at ¶¶ 28-29.  Watkins alleges that the only other detective to have cases reassigned is another female, Detective Betts, who is listed as a witness in several EEO claims Watkins had filed and has her own claim of discrimination against WMATA.  *Id.* at ¶¶ 31-32.  At least one of Betts's cases was reassigned when she was absent from the office, and the case was reassigned to her when she returned.  *Id.*  A male detective who went on vacation did not have his cases reassigned.  *Id.* at ¶ 33.  Additionally, one of Watkins's cases that required several hours of investigation "after/before Plaintiff's scheduled shift" was reassigned to a male detective.  *Id.* ¶ 34.

Also in June 2013, Watkins learned of the option to work alternative hours; by contrast, her co-workers had been informed of this option in April 2013.  *Id.* at ¶ 35.  That same month Watkins was informed that when she filed her lawsuit against WMATA, it "was announced in a meeting attended by all MTPD supervisors on a mandatory basis."  *Id.* at ¶ 30.

Watkins claims that in July 2013 her request for outside employment was delayed, although similarly situated male employees experienced no delay in having their requests for outside employment approved.  *Id.* at ¶¶ 36-38.  That same month, Watkins received a low performance evaluation.  *Id.* at ¶ 39.  In August 2013 her approval for outside work was rescinded, while other similarly situated male employees did not have their approved requests rescinded.  *Id.* at ¶¶ 41-42.  Watkins's leave bank was audited, which resulted in an incorrect report of her leave usage.  *Id.* at ¶ 43.  In November 2013 Watkins was charged twice with dereliction of duty, one of which was for failure to provide a one-hour notification prior to

returning to duty from sick leave.  *Id.* at ¶¶ 45-47.  She alleges that similarly situated employees with no prior EEO activity were not disciplined for similar behavior.  *Id.* at ¶¶ 45-50.

Finally, Watkins claims that she was constructively discharged when she resigned on March 27, 2014.  *Id.* at ¶ 51; *Watkins 1*, Joint Mot. to Stay at 1, ECF No. 15.

**B.     Procedural Background**

Plaintiff filed *Watkins 1* on June 25, 2013.  *Watkins 1*, Compl.  After WMATA filed its answer, ECF No. 4, the parties proposed and were granted a discovery schedule on November 12, 2013.  The case was reassigned to the undersigned judge on June 11, 2014.  After several extensions of discovery, on October 24, 2014, the parties filed a joint motion to stay the case. Joint Mot. to Stay at 1.  The parties represented that Watkins had filed two administrative discrimination claims with the Equal Employment Opportunity Commission (EEOC) alleging retaliation, hostile work environment, and constructive discharge in connection with her resignation from WMATA on March 27, 2014.  *Id.*  The parties stated that the issues before the EEOC and the claims in *Watkins 1* were inextricably intertwined, and therefore they requested a stay to allow the EEOC to complete its proceedings on the pending administrative claims.  *Id.* at 2.

By Order dated October 28, 2014, this court granted the joint motion and ordered the parties to file a joint status report on January 1, 2015, and every ninety days thereafter until the EEOC completed its proceedings, whereupon the parties were directed to file within fourteen days a proposed schedule for further proceedings.  Although this case was administratively closed by Minute Order dated July 6, 2017, the parties were reminded of their obligation to continue to file the status reports as previously ordered.  *Id.*

The parties filed joint status reports through July 10, 2017.  *See* Joint Status Reports, ECF Nos. 16-24, 26-27.  After they failed to file subsequent reports, by Order dated October 16, 2017, this court reminded them of their filing obligation and warned Watkins that failure to comply with court deadlines and/or court orders could result in dismissal.  Thereafter the parties filed joint status reports on October 20, 2017, March 16, 2018, and May 22, 2019, ECF Nos. 31-33, when they again, inexplicably, stopped filing the reports.  The parties also failed to notify the Court within fourteen days of the completion of the EEOC cases and to propose a schedule for further proceedings, as required by the October 28, 2014 Order.

Instead, on November 18, 2019, Watkins filed *Watkins 2*, without designating it as a case related to *Watkins 1*.  Compl., ECF No. 1.  Consequently, the case was assigned to a different judge on this court.  November 20, 2019 Minute Order.  On March 6, 2020, WMATA moved to consolidate *Watkins 2* with *Watkins 1*, on the grounds that the allegations in the two cases arose from substantially the same series of factual events, involved substantially the same witnesses, and thus were "significantly, if not inextricably intertwined."  *Watkins 2*, Mot. to Consolidate Cases at 1-2, ECF No. 9-1.  Watkins consented to consolidation, and by Order dated July 7, 2020, *Watkins 2* was consolidated with *Watkins 1* and transferred to the undersigned.

Watkins then moved to file an amended complaint in *Watkins 2*, which WMATA did not oppose.  *See Watkins 2*, Mot. to Amend, ECF No. 21; Def.'s Notice Concerning Mot. to Amend, ECF No. 22.  On August 10, 2020, WMATA moved to dismiss the claims in *Watkins 1* and *Watkins 2*, pursuant to Fed. R. Civ. 12(b)(6) and 12(c).  *Watkins 2,* Def.'s Mot.

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of the allegations in the complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To overcome a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft,* 556 U.S. at 678, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Not only are the factual allegations to be accepted as true, but the court must draw all reasonable inferences from the facts alleged in the plaintiff's favor.  *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 15 (D.C. Cir. 2008).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft*, 556 U.S. at 678.  Even though detailed factual allegations are not required, the plaintiff must provide sufficient detail to rise above a mere claim that the defendant has caused the plaintiff some harm.  *Id.*; *Yukon-Kuskokwim Health Corp. v. United States*, 444 F. Supp.3d 215, 218 (D.D.C. 2020).

The standard for reviewing a motion under Rule 12(c) for judgment on the pleadings is essentially the same as that for Rule 12(b)(6).  *Tapp*, 306 F. Supp.3d at 391.  A Rule 12(c) motion may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Fox v. District of Columbia*, 924 F. Supp. 2d 264, 268 (D.D.C. 2013) (internal quotations omitted).  With both Rule 12(b)(6), and Rule 12(c), the court must carefully review the factual allegations in the complaint, construe them in favor of the plaintiff, and only grant such motions if it is clear that no material fact remains to be explored and dismissal or judgment is warranted on the face of the complaint.  *Ashcroft,* 556 U.S. at 678; *Tapp*, 306 F. Supp.3d at 391; *Bauman* v. *District of Columbia*, 744 F. Supp.2d 216,

222 (D.D.C. 2010).  But, while a Rule 12(b)(6) motion tests whether a plaintiff has pled

sufficient factual allegations to proceed with a complaint, a Rule 12(c) motion asks whether "'the

merits of the controversy can be fairly and fully decided in this summary manner.'"  *Tapp*, 306

F. Supp.3d at 392 (quoting *5c Charles Alan Wright & Arthur R. Miller, Federal Practice &

Procedure* § 1369 (3d ed. 2004)).

### III.    ANALYSIS

**A.  Dismissal for Failure to Prosecute, Delay, Bad Faith and Failure to Follow Court Order**

WMATA first argues that *Watkins 1* should be dismissed pursuant to Rule 41(b)(1) and

LCvR 83.23 for failure to prosecute, unreasonable delay, bad faith, and failure to follow this

court's order to file regular status reports.  In particular, WMATA argues that Watkins should

have requested the EEOC to issue a right to sue letter after 180 days from the filing of the

undecided administrative claims, as was her right.  *See* Def.'s Mot. at 6-7; 29 C.F.R. §

1601.28(a)(1).  Had she done so, WMATA reasons, the stay in *Watkins 1* would have been lifted

in 2014 and the case could have proceeded years ago.  *See* Def.'s Mot. at 6-7.  WMATA,

however, cites no support for requiring Watkins to terminate EEOC proceedings pursuant to 29

C.F.R. § 1601.28(a)(1).  Having jointly moved for a stay in *Watkins 1* "pending the completion

of the EEOC proceedings[,]" WMATA cannot now object to the length of those proceedings,

especially given that it did not seek to have the stay lifted during this period.  *See* Joint Mot. to

Stay at 2.

WMATA argues that the court's October 28, 2014 stay order required Watkins to file a

notice within fourteen days of completion of the EEOC proceedings.  Def.'s Mot. at 7.  On the

contrary, the court's order directed "the parties" to file this notice, not just Watkins.  WMATA is

as derelict as Watkins in failing to comply with this court's order and should receive no benefit from its equally culpable conduct.

Finally, WMATA argues that Watkins engaged in bad faith by filing *Watkins 2* as an unrelated case, instead of proceeding in *Watkins 1* as contemplated by the stay order and thereby caused WMATA to incur unnecessary expense in having to move to consolidate *Watkins 2* with *Watkins 1*. *See* Def.'s Mot. at 7-8. Watkins responds that the court's October 28, 2014 Order stated that following the completion of the EEOC proceedings the parties should file a proposed schedule to "amend the pleadings if necessary," which did not preclude her from filing a new lawsuit if she so chose. Pl.'s Opp'n at 7-8, ECF No. 34.

Although Watkins is correct that the court's order did not expressly require her to amend the pleadings in *Watkins 1* if she wanted to proceed with her claims then pending before the EEOC, such action was clearly contemplated by the joint motion to stay and this court's order. The court takes a dim view of Watkins choosing to file a new case and failing, allegedly inadvertently, to even designate *Watkins 2* as a related case to *Watkins 1*. This required a different judge on this court to spend time on *Watkins 2* when it should have been assigned to the undersigned judge, and WMATA's counsel to spend time on a motion to consolidate the cases.

Nonetheless, the court will not dismiss the cases on these grounds, although counsel for both parties are reminded of their obligation to diligently comply with court orders and are warned that such failures likely will not receive similar lenient treatment in the future. Failure to comply with this court's orders going forward may result in dismissal and/or sanctions.

## B. Dismissal for Failure to Exhaust Administrative Remedies

A plaintiff claiming discrimination or retaliation as the result of filing a charge of discrimination must exhaust their administrative remedies as a precondition to filing suit. *See,*

*e.g.*, *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).  Failure to timely exhaust administrative remedies is grounds for dismissal.  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008); *Hernandez v. Mao*, 235 F. Supp.3d 172, 177 (D.D.C. 2017).

Moreover, a plaintiff may only litigate claims which were either expressly raised at the administrative level or are sufficiently related to the claims raised that they would naturally follow from a charge of discrimination.  *Park v. Howard*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Louis v. Hagel*, 177 F. Supp. 3d 401, 405 (D.D.C. 2016).

WMATA argues that Watkins's retaliation claims must be dismissed from *Watkins 1* because Watkins failed to exhaust her administrative remedies with respect to those claims before filing *Watkins 1*.  Def.'s Mot. at 12-15.  Watkins responds that WMATA's argument is moot, because the cases have been consolidated and therefore the claims should be considered as related to one set of facts.  Pl.'s Opp'n at 11-12.

Watkins is correct that whether the claims are properly set forth in *Watkins 1* or *Watkins 2*, her claim for retaliation is still before this court for resolution.  Nonetheless, the court agrees with WMATA that the retaliation claims in *Watkins 1* should be dismissed for failure to timely exhaust and can only be raised in *Watkins 2*.

WMATA argues—for the first time in its reply brief—that Watkins's gender and sexual harassment claims in *Watkins 2* should be dismissed for failure to timely file suit after exhausting administrative remedies.  Def.'s Reply at 5-6.  WMATA does not dispute that those claims are properly raised in *Watkins 1*.  Courts generally refrain from considering arguments raised for the first time in a reply brief, *see e.g., Dorriz v. District of Columbia*, 133 F. Supp.3d 186, 196-97 (D.D.C. 2015) (citing *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008)), and

the court sees no reason to depart from that principle here.  Consequently, at this juncture the court will not consider whether Watkins timely exhausted her administrative remedies with respect to the gender or sexual harassment claims raised in *Watkins 2*, although it notes that the Amended Complaint in *Watkins 2* contains no count alleging gender discrimination.  Amended Compl. at 9-17.

**C.  Dismissal for Failure to State a Claim**

     1.     Disparate Treatment on the Basis of Gender

In order for Watkins to state a claim for discrimination based on gender, she must allege that she has been discriminated against on the basis of her gender "with respect to the terms, conditions, or privileges of employment."  *Chambers v. District of Columbia*, 35 F.4th 870, 872 (D.C. Cir 2022).  Although she need not have suffered "objectively tangible harm," the D.C. Circuit has made clear that "not everything that happens in the workplace affects an employee's 'terms, conditions, or privileges' of employment.'" *Id.* at 873-74.

WMATA contends that Watkins has not pleaded that she had suffered a cognizable adverse employment action because of her gender.  It argues that Watkins's claims that Sergeant Muller swore at her, ignored her, and denied her leave requests, training, and requests for overtime do not amount to adverse employment actions.  *See* Def.'s Mot. at 23-24.

Watkins did not respond to WMATA's arguments in her opposition to WMATA's motion to dismiss.  *See generally* Pl.'s Opp'n.  Consequently, this court could treat her gender discrimination claim as conceded.  *See Hogan v. Hayden*, 406 F. Supp.3d 32, 42 (D.D.C. 2019); *Hopkins v. Women's Div., Gen. Bd. Of Glob. Ministries,* 284 F. Supp.2d 15, 25 (D.D.C. 2003).  Nonetheless, at this early stage, and in light of the allegations in the two complaints, the court will deny WMATA's motion on this issue at this juncture, especially given the D.C. Circuit's

recent decision in *Chambers* overruling prior precedent as to what affects the terms, conditions, or privileges of employment. Moreover, even prior to the decision in *Chambers*, a denial of overtime, for example, may violate Title VII if based on gender. *See Robinson v. District of Columbia*, 275 F. Supp.3d 95, 105 (D.D.C. 2017).

    2.   <u>Retaliation</u>

To state a claim for retaliation, a plaintiff must establish that (1) she has engaged in statutorily protected activity, (2) she has suffered a materially adverse action by the agency, and (3) a causal link connects the two. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012); *Duncan v. Johnson*, 213 F. Supp.3d 161, 184 (D.D.C. 2016). Although a plaintiff may establish causation by showing that the defendant "had knowledge of his protected activity and that the adverse personnel action took place shortly after that activity," courts in this Circuit generally follow an informal "three-month rule" for cases in which a plaintiff seeks to establish a prima facie case of retaliation based solely on temporal proximity. *See Hamilton,* 666 F.3d at 1349; *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009); *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 177 F. Supp.3d 336, 344 (D.D.C. 2016); *Buggs v. Powell*, 293 F. Supp.2d 135, 148 (D.D.C. 2003).

WMATA does not dispute that Watkins engaged in protected EEO activity, and Watkins does not dispute that a temporal proximity of approximately three months or less between the protected activity and the alleged retaliation is generally required. *See* Def.'s Mot. at 20-22; Pl.'s Opp'n. at 15-16. WMATA points out that Watkins claims she complained about Muller's conduct in early 2012 but contends that the first act of retaliation took place in December 2012. Def.'s Mot. at 21. Watkins responds that she alleges that soon after complaining about Muller

she was subjected to the adverse actions listed in her Amended Complaint.  Pl.'s Opp'n. at

15(citing *Watkins 2*, Amended Compl., Count Two ¶ 54.

Given that Watkins alleges that she "regularly complained to her supervisor and

throughout her chain of command regarding the discriminatory and retaliatory treatment and

hostile work environment that she was experiencing," *Watkins 2*, Amended Compl., Count Two

¶ 53, the court concludes that there does not appear to be a time lapse of more than three months

between Watkins' complaints and the alleged retaliatory acts.  Although Watkins' use of the

word "regularly" is vague, she also alleges that "in early 2012, Det. Watkins *began repeatedly*

complaining through her chain of command about her supervisor Sergeant Muller's

discriminatory and denigrating conduct."  *Watkins 2*, Amended Compl. ¶ 12 (emphasis added).

This suggests that Watkins made further complaints after the initial one referenced in "early

2012."  Watkins "faces a low hurdle at the motion to dismiss stage" *Winston v. Clough*, 712 F.

Supp. 2d 1, 11 (D.D.C. 2010), and consequently the court will deny WMATA's motion to

dismiss her retaliation claim.

       3.     <u>Hostile Work Environment</u>

To establish a *prima facie* case of a hostile work environment, a plaintiff must show that

"the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal

citations omitted).  In *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), the Supreme

Court emphasized that the standards for finding a hostile work environment are "sufficiently

demanding to ensure that Title VII does not become a 'general civility code'" and that the

conduct must be so extreme as to amount to a change in the terms and conditions of employment.

The Court held that in evaluating a hostile work environment claim, courts must look at all of the circumstances, including the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Faragher*, 524 U.S. at 787-88 (quoting *Harris*, 510 U.S. at 23); *see also Singh* v. *House of Representatives, Comm. on Ways & Means*, 300 F. Supp.2d 48, 56 (D.D.C. 2004) (finding that a rocky working relationship, being kept from important meetings, being humiliated, and supervisor raising voice and being constantly hostile and hypercritical were ordinary tribulations of the workplace and not hostile work environment). A hostile work environment generally is not based on "the ordinary tribulations of the workplace."  *Buie v. Berrien*, 85 F. Supp.3d 161, 180 (D.D.C. 2015) (internal citations omitted).

Watkins first alleges a hostile work environment based on gender.  *Watkins 1*, Compl. ¶ 58.  WMATA argues that she does not allege any examples of intimidation, ridicule, or insult after she complained about Muller's conduct.  Def.'s Mot. at 17.  But Watkins claims that Muller "regularly" and "repeated[ly]" referred to her and other female detectives as bitches and that she was "continually subjected" to the harassing conduct she had alleged.  *Watkins 1*, Compl. ¶¶ 13, 31, 58; *Watkins 2*, Amended Compl. ¶ 54.  This does not constitute a "few occasions," as WMATA argues.  Def.'s Rep. at 10.  Although a one-time use of the term "bitch" may not create a hostile work environment, *see Barrett v. Pepco Holdings*, 275 F. Supp.3d 115, 122 (D.D.C. 2017), a supervisor repeatedly referring to a subordinate female employee by this term is no ordinary tribulation of the workplace.  Instead, it is severe, pervasive, and abusive conduct and is sufficient to create a hostile work environment.  *Bailey v. Henderson*, 94 F. Supp.2d 68, 75 (D.D.C. 2000) ("It breaks no new legal ground to state . . . that the use of the word 'bitch' can

create a hostile work environment; whether it does or does not depends on the particular circumstances of the case.").

Watkins also alleges that from December 2, 2012 until February 5, 2013, when she filed her amended EEO claim, her supervisors at one time or another refused to speak to her about work-related matters, spoke to her with their backs turned, refused to assist her, yelled at her when she sought assistance from another supervisor, spoke to her in a curt, demeaning, and condescending manner, denied her request for leave or to leave early, denied requests for overtime, denied career-enhancing training, and placed her on an undeserved Performance Improvement Plan. *Watkins 1*, Compl. ¶¶ 17-24, 36. Watkins claims that similarly situated male detectives were not treated in a similar fashion. *Watkins 1*, Compl. ¶¶ 17, 21-24, 27-28, 37. These allegations are sufficient to make out a claim of adverse treatment based on sex.

The legal standard for a hostile work environment based on discrimination and one based on retaliation are the same. *Bonnette v. Shinseki*, 907 F. Supp.2d 54, 80 n.11 (D.D.C. 2012). A plaintiff must plead facts to state a claim that the alleged retaliatory harassment is severe or pervasive enough to create an abusive working environment. *Harris*, 510 U.S. at 21.

WMATA argues that in *Watkins 2*, Watkins has merely pled several discrete employment actions rather than severe and pervasive harassment abusive enough to rise to the level of a hostile work environment. Def.'s Mot. at 18. WMATA also contends that Watkins failed to identify the supervisors responsible for these employment actions or raise an inference that these actions were related to her complaints about Muller. *Id.* at 19.

Watkins responds that the actions she has alleged, such as being demoted, being charged with dereliction of duty, being placed on a CAP, being given a one-day suspension, being given an undeservedly low performance evaluation, having a request for outside employment delayed

and then rescinded, having a case reassigned, and having her leave bank audited, *Watkins 2*, Amended Compl. ¶¶ 15, 17, 19, 26, 28, 36, 39, 41, 43, 45, 47, demonstrate harassing conduct. *See* Pl.'s Opp'n at 13-14.  She also points out that she names the supervisors who retaliated against her, although she does not dispute that she did not tie a specific supervisor to each retaliatory act.  *See id.* at 14 (citing Amended Comp. ¶ 14).

Watkins is not required to plead with a level of specificity that ties a specific supervisor to each retaliatory act.  She alleges that she complained about the conduct of one supervisor in her chain of command and that subsequently other supervisors in her chain of command retaliated against her.  At the motion to dismiss stage, this is sufficient.  *See Williams v. District of Columbia,* 317 F. Supp.3d 195, 199 (D.D.C. 2018) (Title VII plaintiff "need only allege facts that 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'") (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002)).

Nonetheless, the court agrees with WMATA that, as currently pled, Watkins has alleged discrete personnel actions which are not, individually or when considered together, severe and pervasive enough to create an abusive working environment.  Although under certain circumstances a series of personnel actions may rise to the level of a hostile work environment, *see Baird v. Gotbaum,* 662 F.3d 1246, 1252 (D.C. Cir. 2011), "this jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim."  *Baloch v. Norton*, 517 F. Supp.2d 345, 364 (D.D.C. 2007).  As the D.C. Circuit has stated, "a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard," which requires a showing of "'sufficiently severe or pervasive'" conduct consisting of acts that are

"adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird,* 662 F.3d at 1252 (internal citations omitted).

As noted above, in *Watkins 1* Watkins alleged that her supervisor regularly refused to speak to her about work-related matters, spoke to her with his back turned, regularly yelled at her, spoke to her in a curt, demeaning and condescending manner, denied her request for leave, overtime and training, and that this conduct constituted a hostile work environment based on retaliation. Compl., ¶¶ 17-20, 22-24. She did not plead any of these allegations in *Watkins 2*, which contains the only viable retaliation claims, *see, supra,* at 9-10, nor did she rely on these allegations in her opposition to WMATA's motion to dismiss the *Watkins 2* hostile work environment claim based on retaliation. *See* Pl.'s Opp'n at 14-15. Accordingly, the court does not consider the *Watkins 1* allegations in connection with the *Watkins 2* hostile work environment claim based on retaliation.

Thus, the court finds that demotions and charges of dereliction of duty, as pleaded here, do not necessarily rise to the level of a hostile work environment. *See Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 807 (11th Cir. 2010) ("Disparate treatment can take the form either of a 'tangible employment action,' such as a firing or demotion, or of a 'hostile work environment' that changes 'the terms and conditions of employment, even if the employee is not discharged, demoted, or reassigned."); *Bergbauer v. Mabus*, 934 F. Supp.2d 55, 84-85 (D.D.C. 2013) (loss of pay or removal of job duties concern "concrete or tangible employment actions that are not appropriately brought as part of a hostile work environment claim."). The same is true for the other discrete actions Watkins alleges, such as being placed on a CAP, receiving a low performance evaluation, being suspended, having a request for outside employment delayed and then rescinded, having a case reassigned, and having her leave bank audited. None of these

discrete actions include allegations that Watkins "was subjected to 'intimidation, ridicule or insult,' that she was 'physically threatened or humiliated, 'or that she was subject to any form of abuse other than the denial of opportunities to which she contends she was entitled." *Panarello v. Zinke*, 254 F. Supp.3d 85, 103 (D.D.C. 2017). The disciplinary actions and workplace conflicts as currently alleged, separated at times by two to five months, *see, e.g., Watkins 2*, Amended Compl. ¶¶ 19, 26, 41, 47, were not so severe or pervasive to have altered the conditions of Watkins's employment.

Accordingly, the court denies without prejudice Defendant's Motion to Dismiss as it pertains to Watkins's claim of hostile work environment based on retaliation.

### 4.   Constructive Discharge

To make out a claim of constructive discharge, a plaintiff must show "that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Cole v. Powell*, 605 F. Supp.2d 20, 25 (D.D.C. 2009) (quoting *Turner v. District of Columbia*, 383 F. Supp.2d 157, 171 (D.D.C. 2005)); *Stewart v. Gates*, 786 F. Supp.2d 155, 168 (D.D.C. 2011). A finding of constructive discharge thus "'requires a finding of discrimination *and* the existence of certain 'aggravating factors'" that would force a reasonable employee to resign. *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006) (*Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997)) (internal citation omitted). The "severe and pervasive" requirement of a hostile work environment also applies to the "aggravating factors" of a constructive discharge claim based on a hostile work environment. *See Veitch*, 471 F.3d at 131; *Manuel v. Potter,* 685 F. Supp.2d 46, 71-72 (D.D.C. 2010) (placement on

performance improvement plan and other routine actions were insufficient to state a claim for constructive discharge).

Stating a claim for a hostile work environment does not automatically state a claim for a constructive discharge. The Supreme Court has made clear that "the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders,* 542 U.S. 129, 134 (2004). Thus, "unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Robinson v. Ergo Sols., LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015).

WMATA argues that it enjoys sovereign immunity from common law causes of action relating to personnel decisions made by WMATA management. Def.'s Mot. at 27 (citing *Jones v. Washington Metro. Area Transit Auth.*, 205 F.3d 428, 432 (D.C. Cir. 2000)). This argument is unavailing. Watkins claims that WMATA's actions towards her were motivated by discriminatory animus and that WMATA rendered her working conditions so intolerable that she had no choice but to resign. Her claims do not implicate WMATA's immunity with respect to its personnel decisions. Indeed, the D.C. Circuit in *Jones*, upon which WMATA relies, expressly upheld relief awarded to the plaintiff in a Title VII case brought against WMATA. 205 F.3d at 435.

Watkins argues that a reasonable person would have been driven to resign based on the series of adverse employment actions she experienced, such as charges of dereliction of duty, a demotion, a suspension, the denial of overtime and leave requests, and lack of promotion opportunities (for which she does not plead specific facts). Pl.'s Opp'n at 16. She claims that all

these actions are akin to "thinly veiled threats of termination," especially given that they increased in frequency and severity after she complained of discrimination. *Id.*

Yet Watkins fails to tie any of these actions, the last of which she alleges occurred in November 2013, *Watkins* 2, Amended Compl., ¶ 45, to the date she resigned in March 2014. There is no allegation as to how long she was subjected to the verbal abuse by Muller and she does not mention this verbal abuse in her opposition to WMATA's motion to dismiss her constructive discharge claim. *See* Pl.'s Opp'n at 16.

Watkins' reliance on a series of discrete allegedly adverse employment actions is insufficient to support a claim of constructive discharge. Although there is some disagreement in this district as to whether constructive discharge can be a standalone cause of action,[2] Watkins has failed to plead sufficient facts to establish that the adverse actions she identifies, alone or in combination, created a working environment so intolerable that any reasonable person would have concluded that resignation was the only reasonable recourse.

## IV.   CONCLUSION

For the reasons set forth above, the court will GRANT in part and DENY in part WMATA's motion to dismiss.   In 13-cv-0963, WMATA's motion is granted with respect to the claims of retaliation in Counts Two and Three of the Complaint.  With respect to 19-cv-3478, WMATA's motion is granted with respect to the hostile work environment claim based on retaliation in Count One and the constructive discharge claim in Count Three.  WMATA's

---

[2] *Compare, e.g., Robinson-Reeder v. Am. Council on Educ.,* 532 F. Supp.2d 6, 17 (D.D.C. 2008) ("An allegation of constructive discharge arising out of discriminatory employment actions may, in proper circumstances, constitute an independent claim for recovery . . ."), *aff'd,* 417 F. App'x 4 (D.C. Cir. 2011), *with, e.g., Owens-Hart v. Howard Univ.,* 220 F. Supp.3d 81, 97 (D.D.C. 2016) ("[C]laims of constructive discharge are not stand-alone causes of action.")

motion is denied with respect to the claims of gender discrimination, retaliation, and hostile work environment based on gender.

Date: March 31, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge